UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-cv-22784-KING

THE PROMENADE PLAZA PARTNERSHIP,
a Florida partnership,

      Plaintiff,

v.

CENTIMARK CORP., a foreign corporation,

      Defendant.
_____/

## ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon cross-motions for summary judgment: Defendant Centimark's Motion for Summary Judgment (DE 38) and Plaintiff Promenade's Motion for Partial Summary Judgment (DE 40). The motions are fully briefed. This action concerns a roof system that Centimark installed over Promenade's shopping center in 2005 and 2006. The parties' agreement to install the roof system includes a contract dated December 15, 2005, and a warranty dated April 6, 2006.

Promenade brought this action for damages alleging various defects in the roof system that were "proximately caused by the improper construction and/or failure of the Roof System," or the use of improper materials during installation. Promenade also contends that certain repairs Centimark performed in 2012 have caused or contributed to certain roof defects. The parties' cross-motions for summary judgment address three narrow issues: (1) which state law applies, and consequently which limitations period governs Promenade's claims; (2) whether Promenade's claims are time-barred under the governing limitations

period; and (3) whether Promenade's potential damages are limited by the April 2006 Warranty. Upon consideration of the parties' cross-motions, and with the benefit of oral argument,[1] the Court concludes that the cross-motions should be denied.

### I.   Standard on Motion for Summary Judgment

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it is may determine the outcome under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party must show specific facts to support that there is a genuine dispute. *Id.* at 256. On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *Id.* at 255. In reviewing the record evidence, the Court may not undertake the jury's function of weighing the evidence or undertaking credibility determinations. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010).

### II.   Which Law Governs—Florida or Pennsylvania?

The parties disagree over which law governs Promenade's claims. Promenade argues that Florida law governs, because Document A205, which is part of the Contract, says it does: "The Contract shall be governed by the law of the place where the project is located [i.e., Florida]." DE 44-1, at 4. Centimark argues that Pennsylvania law governs, because the April 2006 Warranty says it does: "This Warranty is issued at the Corporate offices of

---

[1] The Court heard approximately one hour of oral argument on March 17, 2015, at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida.

Centimark Corporation in Canonsburg, Pennsylvania, and accordingly is governed by Pennsylvania law." DE 38-1. A sample copy of the April 2006 Warranty is incorporated into the Contract, and the parties contemplated its future issuance.

Florida's choice-of-law rules determine whether Florida or Pennsylvania law applies. *Am. Family Life Assurance Co. of Columbus, Ga. v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989). As one Court in the Southern District of Florida recently recognized, in a case involving Centimark and similar contractual provisions, there is a distinction between claims brought under the Contract and those brought solely under the Warranty. *Driftwood Hospitality Mgmt., LLC v. Centimark Corp.*, No. 14-cv-61802, 2014 WL 4825274, at *2 (S.D. Fla. Sept. 25, 2014) (Bloom, J.).[2] Understanding this, the Court concludes that the two choice-of-law provisions do not conflict. By their express terms, the Florida choice-of-law provision in the Contract governs "[t]he Contract," and the Pennsylvania choice-of-law provision in the April 2006 Warranty governs "[t]his Warranty."

The Court's conclusion about which law governs Promenade's claims determines which limitation-of-action provision governs Promenade's claims: The contractual one-year limitation-of-action provision in the April 2006 Warranty governs claims that arise under the Warranty, running "from the date that a defect in materials or workmanship, or other breach or any other claim is discovered or reasonably should have been discovered." DE 38-1. Florida's four-year statute of limitation governs claims that arise under the Contract, running

---

[2] The *Driftwood* opinion addressed choice-of-venue provisions rather than choice-of-law provisions.

3

from "the time the [latent] defect is discovered or should have been discovered with the exercise of due diligence." Fla. Stat. 95.11(3)(c).[3]

### A. The Limitation-of-Remedies Provision in the April 2006 Warranty

As more fully explained in Part III, below, the Court cannot conclude that Promenade's claims necessarily arise under either the Contract or the April 2006 Warranty as a matter of fact. Centimark nevertheless argues that Promenade's claims necessarily arise under the April 2006 Warranty as a matter of law.

The April 2006 Warranty, by its express terms, covers only "leaks resulting from defects in the materials or workmanship in the roof services (services) performed by CentiMark." DE 38-1. This "leaks" Warranty must be read as a limitation on the Contract's general warranty of materials and workmanship:

> The Contractor warrants to the Owner and Architect that: (1) materials and equipment furnished under the Contract will be new and of good quality unless otherwise required or permitted by the Contract Documents; (2) the Work will be free from defects not inherent in the quality required or permitted; and (3) the Work will conform to the requirements of the Contract Documents.

DE 44-1, at 2. That is, to the extent Promenade seeks to recover for "leaks resulting from defects in the materials or workmanship in the roof services (services) performed by CentiMark," Promenade's recovery is limited by the terms of the "leaks" Warranty.

---

[3] Although the one-year limitation-of-action provision in the April 2006 Warranty applies to "any claims," the limitation is void under Florida law, Fla. Stat. 95.03, and therefore cannot govern Promenade's claims arising under the Contract. The one-year limitation is permissible under Pennsylvania law, 42 Pa. Cons. Stat. § 5501(a), and enforceable in Florida courts as to Promenade's claims arising under the April 2006 Warranty. *Mazzoni Farms, Inc. v. EI. DuPont De Nemours & Co.*, 761 So. 2d 306 (Fla. 2000); *Burroughs Corp. v. Suntogs of Miami, Inc.*, 472 So. 2d 1166 (Fla. 1985).

4

Centimark nevertheless argues that Promenade's *only* available causes of action are those covered by the "leaks" Warranty, due to the "leaks" Warranty's "Exclusivity of Warranty and Limitation of Remedies" provision:

> CENTIMARK EXPRESSLY DISCLAIMS ALL EXPRESS OR IMPLIED WARRANTIES INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER IMPLIED WARRANTY. THIS EXPRESS LIMITED WARRANTY CONTAINS THE SOLE AND EXCLUSIVE WARRANTY AND REMEDY OF PURCHASER AGAINST CENTIMARK. THERE IS NO EXPRESS WARRANTY OTHER THAN THAT STATED IN THIS WARRANTY.

DE 38-1. The Court concludes that this provision must be read as relating only to the subject matter of the "leaks" Warranty. First, to the extent this provision can be read to limit Promenade's available legal relief against Centimark to actions for "leaks," regardless of any conceivable breach or other wrongdoing relating to the parties' Contract (which is governed by Florida law), the Court finds the limitation to be unreasonable. *See Ocean Dunes of Hutchinson Island Dev. Corp. v. Colangelo*, 463 So. 2d 437, 439 (Fla. 4th DCA 1985) ("Such contractual provisions . . . must be reasonable to be enforced."). Second, the provision must be read together with a later provision in the "leaks" Warranty: "This Warranty Agreement is understood to be the complete and exclusive warranty agreement between the Purchaser and CentiMark, superseding all prior agreements, whether oral or written, and all other communications between the parties **relating to the subject matter of this Warranty.**" DE 38-1 (emphasis added). The Court holds that Promenade's available legal relief against Centimark is limited to actions under the "leaks" Warranty only to the extent that such legal relief relates to "leaks resulting from defects in the materials or workmanship in the roof services (services) performed by CentiMark."

**III.     Has the Statute of Limitations Expired on Plaintiff's Claims?**

The Court has concluded that Florida's four-year statute of limitations governs Promenade's claims arising under the Contract, and that the contractual one-year limitation-of-action provision governs Promenade's claims arising under the "leaks" Warranty. Three questions then follow: (1) which of Promenade's claims arise under the Contract; (2) which of them arise under the "leaks" Warranty; and (3) are they time-barred?

In the instant cross-motions for summary judgment, and at oral argument, the parties focused exclusively on the issue of moisture in the roof system. The motions do not address other allegations in Plaintiff's Complaint that are not patently related to moisture in the roof system, including the following: "Product failure at low sloped areas with exposed fiberglass/polyester reinforcement"; "[t]he roof does not have T-joint covers which are needed at multiple layer intersections to prevent roof leaks"; "[i]mproper sloping of the roof system"; and "contrary to the Roof System Contract," Centimark installed an inferior, deteriorating product called Versico rather than a contracted-for product called Carlisle. *See* DE 1, at 8–9. As to these allegations, Centimark has not shown that they arise under the "leaks" Warranty. These allegations are simply unaddressed in the instant cross-motions (albeit discussed by the parties' competing experts, whose reports are in the record).

As for the allegations relating to moisture in the roof system, Centimark does not genuinely dispute that "during installation, CentiMark ruptured a water pipe that flooded the Badcock furniture store." DE 49, at 7 ¶ 8. *See* DE 55, at 2 ¶ 8. Furthermore, a January 2006 roof moisture survey ordered by Centimark shows there was an area of "[m]oisture trapped between roof systems" even before Centimark installed the roof system at issue in this case. DE 55-1, at 4. It is also undisputed that "[t]he presence of moisture in a roof system is

6

common and every roof has at least some amount of moisture in it." DE 41, at 4 ¶ 16. Finally, in an invoice for work completed on May 7, 2014, Centimark informed Promenade that an unidentified number of "punctures in the membrane. . . . were due to incorrect materials used to patch thecore [sic] samples that were taken by Centimark." DE 49-1, at 30. Promenade asserts that this invoice is an admission by Centimark that it incorrectly performed patchwork in 2012, which caused or contributed to moisture in the roof system. DE 49, at 10. Centimark counters that its use of the term "incorrect materials" was an innocent way of explaining that it formerly used materials for temporary repairs and was merely replacing them with materials for permanent repairs. DE 55, at 5. In other words, the parties genuinely dispute the meaning of the invoice.

One conclusion is inescapable: the parties genuinely dispute the cause, nature, and extent of the moisture in the roof system. On this record, the Court cannot conclude, as a matter of law, that the moisture problems necessarily constitute, in whole or in part, "leaks." Therefore, the alleged defects in the roof system relating to moisture are not necessarily governed by the "leaks" Warranty's one-year limitation-of-action provision. It is a cardinal principle of interpretation that a contract's terms, unless otherwise indicated, are to be construed according to their plain and ordinary meaning, as understood by the average person. A group of average persons, acting as the factfinder in the form of a jury, are in the best position to apply the term "leak" to Promenade's claims, in light of all of the evidence to be adduced at trial. Neither party is entitled to judgment as a matter of law as to whether Promenade's claims are barred by the one-year limitation-of-action provision in the "leaks" Warranty.

7

The Court would be able to find that Promenade's claims are time-barred as a matter of law only if it found that certain 2009 e-mails show that Promenade was on notice of its claims brought in the instant action. If the e-mails should have caused Promenade to discover any alleged roof defects "with the exercise of due diligence," then Promenade's claims relating to those defects would be time-barred. Fla. Stat. 95.11(3)(c). In one of the e-mails, Promenade's roofing inspector (Murton Roofing Corp.) told Plaintiff as follows:

> that the insulation is wet on approximately 40% - 50% of the entire roof area. [Our estimator] cut the roof in one area and based on the feel of the roof where he walked he is assuming that the other areas are also wet. . . . This tells us that either the insulation got wet during the installation or we simply have not yet discovered where the water is entering the system.

DE 39-9. In the other e-mail, Promenade told Centimark that Promenade "did core drillings that revealed a wet roof after you advised the roof was dry." DE 39-10. The question of when a party should have discovered a latent defect with the exercise of due diligence is ordinarily a question of fact for the jury. The law in that respect is the same in Florida and Pennsylvania. *See Carter v. Brown & Williamson Tobacco Corp.*, 778 So. 2d 932, 937 (Fla. 2000); *Amodeo v. Ryan Homes, Inc.*, 595 A.2d 1232, 1236 (Pa. Super. 1991). In light of the parties' genuine dispute as to the cause, nature, and extent of the moisture in the roof system, the Court concludes that reasonable persons could disagree as to whether the 2009 e-mails should have caused Promenade to discover any alleged roof defects with the exercise of due diligence. Neither party is entitled to judgment as a matter of law as to whether Promenade's claims are barred by Florida's four-year statute of limitations.

8

### IV. Are Plaintiff's Damages Limited by the "Leaks" Warranty?

Centimark argues that Promenade's potential damages are limited by the terms of the "leaks" Warranty. In light of the Court's determination as to the limitation-of-actions issue, above, the Court cannot conclude, as a matter of law, which if any of Promenade's potential damages are limited by the terms of the "leaks" Warranty. Neither party is entitled to judgment as a matter of law on this issue.

### V. Conclusion

Therefore, it is **ORDERED, ADJUDGED, and DECREED**:

1. Defendant Centimark's Motion for Summary Judgment **(DE 38)** be, and the same is, hereby **DENIED**; and

2. Plaintiff Promenade's Motion for Partial Summary Judgment **(DE 40)** be, and the same is, hereby **DENIED**.

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 25th day of March, 2015.

_____
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:   All Counsel of Record

**Nicholas D. Siegfried**
Seigfried, Rivera, Hyman, Lerner, DeLaTorre, Mars, et al.
201 Alhambra Circle
Eleventh Floor
Coral Gables, FL 33134
Email: nsiegfried@srhl-law.com

**Matthew R. Tuchman**
Siegfried, Rivera, Hyman, Lerner et. al.
201 Alhambra Circle, Eleventh Floor
Coral Gables, FL 33134-5108
Email: mtuchman@srhl-law.com

**Katherine Abigail Roberts**
Rumberger, Kirk & Caldwell
Brickell Bayview Centre, Suite 3000
80 SW 8th Street
Miami, FL 33130
Email: aroberts@rumberger.com

**Michael Kevin Gutman**
Rumberger, Kirk , Caldwell, P.A.
80 S.W. 8th Street
Suite 3000
Miami, FL 33130
Email: mgutman@rumberger.com

**Gregory Mark Palmer**
Rumberger Kirk & Caldwell
Brickell Bayview Centre
80 SW 8th Street
Suite 3000
Miami, FL 33130
Email: gpalmer@rumberger.com